**Jan SKALA**
v.
**Joseph SATALOFF.**
Civ. A. No. 69–929.

United States District Court
E. D. Pennsylvania.
June 30, 1969.

White & Williams, John Francis Gough, Philadelphia, Pa., for plaintiff.

Steinberg, Greenstein, Richman & Price, James L. Price, Philadelphia, Pa., for defendant.

## OPINION

KRAFT, District Judge.

This action arises from a dispute concerning the ownership of a collection of antique jewelry, comprised of 210 to 213 pieces, having a gross value of approximately $73,500. Specifically, plaintiff seeks rescission of two agreements entered into by the parties, and a determination that a third agreement between plaintiff and the former owner of the collection, is valid and vests title to the entire collection in the plaintiff, or, alternatively, that under one of the aforesaid agreements, the plaintiff's previous selection of pieces, which represents a portion of the entire collection, be rescinded and that an appraiser be appointed by the Court to assign values to each piece selected by plaintiff until plaintiff shall have selected pieces of an aggregate of $15,000.

Presently before us is plaintiff's motion for a preliminary injunction to restrain the defendant from selling or otherwise disposing of the remaining pieces of the collection.

Defendant has now moved to dismiss plaintiff's complaint because (1) plaintiff has already received and accepted certain pieces having a value of $9,330 and acknowledged receipt thereof by a signed receipt; that plaintiff, therefore, is only entitled to sue for pieces having a value of $5,670, which is the balance due under the agreement with defendant; (2) plaintiff comes into Court with "unclean hands" because he has already sold 6 pieces received from defendant and is therefore unable to make those pieces available for the appraisal which he seeks in this action; (3) the parol evidence rule precludes plaintiff from contradicting, varying or altering the written agreements.

After argument and careful consideration of the motion to dismiss, we think that the motion should be denied. The fact that plaintiff has received under the contract some of the pieces, having a *wholesale* value of $9,330, does not preclude plaintiff, who is a jeweler, from presenting evidence, at a trial on the merits, to endeavor to establish any loss he has sustained or may sustain under applicable principles of damage. Defendant's exhibit, attached to his motion, shows that he placed on many of the pieces already delivered wholesale values far in excess of the wholesale values assigned by plaintiff.

We cannot say with certainty, at this juncture, that the amount in controversy does not exceed $10,000, exclusive of interest and costs. The remaining grounds advanced by defendant are improperly raised on a motion to dismiss. They are substantive defenses to the merits of plaintiff's complaint, which is sufficiently well pleaded to state a claim upon which relief can be granted.

We now direct our attention to the plaintiff's motion for a preliminary injunction. The collection of antique jewelry consists of 210 to 213 pieces created by Peter Carl Faberge, purportedly jeweler and goldsmith to the Court of Imperial Russia. The pieces, of Russian, French, Swedish and Austrian origin, are unique and of considerable value.

Plaintiff is a jeweler, residing in New York City. Defendant is a Philadelphia physician, whose interest in antique jewelry is that of artist, collector and dealer.

Plaintiff, in June, 1968, became aware of this collection of antique jewelry, which was being exhibited at the Brandeis University Museum in Boston, Massachusetts. He communicated with Mr. Kopelman, the owner, concerning possible purchase of the collection. Later, defendant also learned of the collection through the plaintiff and the parties thereafter became embroiled in a dispute as to who had the right to purchase the entire collection.

In order to resolve this dispute plaintiff and defendant executed a handwritten agreement (Ex. P–5), on October 19, 1968, by which plaintiff agreed to let defendant purchase the entire collection and defendant agreed to sell plaintiff

therefrom $15,000 "worth of enamels at a wholesaleprice."

On October 23, 1968, three agreements were executed: (1) a bill of sale (Ex. P–1) from Kopelman to plaintiff of the entire collection for $73,500; (2) a bill of sale (Ex. P–2) from plaintiff to defendant of the entire collection for $73,500; (3) a bill of sale (Ex. P–3) from defendant to plaintiff of $15,000 worth of "Swedish & Austrian enamels to be selected to the satisfaction of both parties." [1]

On the second page of P–3 appears a handwritten addendum, which states: "The selection of the pieces is to be made within a week & the Buyer is to take delivery at the time of the selection." The signatures of both parties are then subscribed below the handwritten addendum, which was added after the parties had signed the typewritten agreement. Plaintiff's signature, below a typewritten clause acknowledging receipt of the enamels, was deleted; then the addendum was added and signed by both parties.

On October 24, 1968, the parties met in defendant's office to permit plaintiff to select his enamels under the agreement. A dispute arose over the values to be attributed to each piece and defendant prepared a handwritten list of the pieces selected by plaintiff with defendant's value on the left side of each item and plaintiff's value on the right. (Ex D–1).

The plaintiff received and accepted 25 items, which, according to a receipt then signed by him, had a wholesale value of $9,330.[2] In addition to Swedish and Austrian enamels, which plaintiff was entitled to select under the agreement, plaintiff also selected several items of Russian and French origin.

The parties met again thereafter, but were unable to agree upon the prices to be paid for the remaining enamels to be selected by plaintiff, who now seeks to restrain defendant from disposing of any of the remainder of the collection until a final hearing.

Plaintiff is entitled, under the agreement, to select $15,000 worth of Swedish and Austrian enamels. There were 35 to 40 Swedish and Austrian pieces in the collection purchased from Kopelman. Defendant has all of those which remained after plaintiff's selection, numbering 8, or possibly, 9.

Plaintiff has valued the pieces already received at $9,330. Defendant has valued these pieces at $15,605. (Ex. D–1).

If the wholesale value of the pieces already accepted by plaintiff is less than $15,000, the defendant, under the contract, is bound to make the remaining Swedish and Austrian pieces available to plaintiff for further selection until the $15,000 total value is reached.

The agreement provides that selection is to be made to the "satisfaction of both parties." Unfortunately, the parties, in their contract, failed to anticipate the possibility of disagreement and omitted to provide an agreed remedy to resolve their present dispute.

 A motion for a preliminary injunction is an appeal to the equity powers of the Court. Relief is intended to be both flexible and practical and a remedy may be molded according to the circumstances of each case. Applying these principles to this case we reach the following

## CONCLUSIONS

1. The parties have failed to agree "to the satisfaction of both parties" what values are to be assigned to the pieces already selected by plaintiff, and to the remaining Swedish and Austrian enamels from which plaintiff is entitled to further selections under the agree-

---

1. The quoted portion of this agreement was handwritten at the bottom of the front page of P–3 and integrated into the body of the typewritten agreement by an as-terisk. This handwritten portion was added before the signatures were affixed.

2. Exhibit attached to defendant's motion to dismiss.

ment, if the value of those previously selected is less than $15,000.

2. The *values* assigned by the parties, respectively, to the pieces previously selected (Ex. D–1) should be set aside as contrary to the terms of the contract (Ex. P–3).

3. The earlier *selection* of pieces by plaintiff should not be set aside.

4. A qualified appraiser or appraisers should be appointed by the Court, at the joint expense of the parties, to appraise the pieces heretofore received by plaintiff and the Swedish and Austrian pieces remaining from the collection in defendant's possession.

Accordingly, we enter the following

### ORDER

Now, this 30th day of June, 1969, it is ordered that:

1. Defendant, Joseph Sataloff, be and he is enjoined and restrained, until further order of this Court, from selling or otherwise permitting to pass from his possession the Swedish and Austrian pieces remaining from the original collection after plaintiff's earlier selection.

2. Plaintiff, Jan Skala, be and he is enjoined and restrained, until further order of this Court, from selling or otherwise permitting to pass from his possession the pieces previously selected and received by him from the collection.

3. The respective values assigned by the respective parties to the sundry pieces previously selected and received by plaintiff be, and they are, set aside.

4. The prior selection and receipt by plaintiff of sundry pieces from the collection shall not be disturbed.

5. Plaintiff and defendant shall, within 20 days of the effective date of this order, endeavor to agree upon a disinterested, qualified appraiser and, upon agreement, shall notify the Court in writing, of the name and address of such person forthwith. Failing agreement each party shall, before August 5, 1969, furnish this Court with a list of disinterested, qualified appraisers and their addresses.

6. Upon agreement by the parties on a disinterested qualified appraiser, the Court will appoint such appraiser, at the joint expense of the parties, to make such appraisals at such times and places and under such conditions as the Court may direct.

Upon failure of the parties so to agree, the Court will appoint an appraiser or appraisers from the lists furnished by the respective parties or from any other source the Court may elect, at the joint expense of the parties, to make such appraisals at such times and places and under such circumstances as the Court may direct.

7. This order shall become effective upon the deposit by plaintiff with the Clerk of this Court of security, with approved surety, in the amount of $6,000, conditioned for compliance by plaintiff with all orders of this Court in this action.